UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>DWIGHT WEEMS,<br><br>    Defendant. | Case No. CR15-89RSL<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on defendant's "Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)." Dkt. # 105. Having considered the motion and the record contained herein, the Court finds as follows:

I. **PROCEDURAL MOTIONS**

As an initial matter, the Court finds compelling reasons justify sealing defendant's records containing sensitive information (Dkts. # 107, # 116). The parties' respective motions to seal (Dkts. # 106, # 115) are accordingly GRANTED. The government's motion to file an overlength response (Dkt. # 113) is also GRANTED.

II. **BACKGROUND**

Defendant is a 46-year-old inmate currently incarcerated at Herlong Federal Correctional Institution ("Herlong FCI"). Dkts. # 105 at 2, 4, # 114 at 3. On September 21, 2015, defendant pled guilty to conspiracy to distribute cocaine and heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and 846, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Dkt. # 44. On January 8, 2016, the Court sentenced

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 1

defendant to a 192-month prison term and five years of supervised release. Dkt. # 69 at 2–3. Defendant is currently scheduled for release from the custody of the Federal Bureau of Prisons ("BOP") on October 15, 2028. Dkts. # 105 at 4, # 114 at 3. He now moves for compassionate release.

### III. LEGAL FRAMEWORK

The compassionate release statute provides narrow grounds for defendants in "extraordinary and compelling" circumstances to be released from prison early. See 18 U.S.C. § 3582(c). The First Step Act of 2018 amended the procedural requirements governing compassionate release. See id. Prior to the First Step Act's passage, only the Director of the BOP could bring motions for compassionate release. The Director rarely filed such motions. See, e.g., United States v. Brown, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). Congress amended the statute to allow defendants to directly petition district courts for compassionate release. As amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part,

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
> 
> > (1) in any case—
> > 
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > > 
> > > > (i) extraordinary and compelling reasons warrant such a reduction; . . .
> > > > 
> > > > (ii) . . .

and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

Prior to passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. See 28 U.S.C. § 994(t). Section 994(t) provides,

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in [18 U.S.C. § 3582(c)(1)(A)], shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13. In relevant part, the policy statement provides,

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.
>
> **Commentary**
>
> **Application Notes:**
>
> 1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>    (A) **Medical Condition of the Defendant**—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 4

2. **Foreseeability of Extraordinary and Compelling Reasons.**—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

3. **Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.

4. **Motion by the Director of the Bureau of Prisons.**—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law[.]

U.S.S.G. § 1B1.13. The Ninth Circuit has held that U.S.S.G. § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." United States v. Aruda, 993 F.3d 797, 798 (9th Cir. 2021). The Court may consider U.S.S.G. § 1B1.13 in exercising its discretion, but the policy statement is not binding. Id.; see United States v. Van Cleave, Nos. CR03-247-RSL, CR04-125-RSL, 2020 WL 2800769, at *3–5 (W.D. Wash. May 29, 2020) (referring to the guidance of U.S.S.G. § 1B1.13 as "persuasive, but not binding").

## IV. DEFENDANT'S CIRCUMSTANCES

### a. Exhaustion Requirement

Prior to considering the merits of defendant's motion, the Court must determine whether he has met the statutory exhaustion requirement for compassionate release. See 18 U.S.C. § 3582(c)(1)(A). The parties agree that defendant satisfied this requirement. Dkts. # 105 at 6, # 114 at 4. On September 8, 2020, defendant submitted a request for compassionate release, which the Warden at Herlong FCI denied on September 30, 2020. Dkt. # 114-1. Because thirty days have lapsed since the request was presented to the Warden, the Court finds defendant has exhausted his administrative remedies, and the Court will consider the merits of his motion for compassionate release.

### b. "Extraordinary and Compelling" Circumstances

Defendant's motion for compassionate release is based on his argument that he is at heightened risk for developing serious complications if he contracts COVID-19 while incarcerated at Herlong FCI. The Court need not reiterate the widely known information regarding the symptoms of COVID-19 and the devastating global impact of the virus. COVID-19 has created unprecedented challenges for federal prisons, where inmate populations are large and close contact between inmates is unavoidable. As of May 5, 2021, the BOP reports 126 federal inmates and 164 BOP staff have active, confirmed positive COVID-19 test results. See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 5, 2021). Since the BOP reported its first case in late March 2020, at least 234 federal inmates and four BOP staff members have died from the virus. Id. Herlong FCI currently reports zero inmates and zero staff with active, positive COVID-19 test results. Id. BOP has classified 233 inmates and 27 staff at Herlong FCI as having "recovered" from the virus and zero as having died from it. Id. The Court acknowledges that the COVID-19 outlook is not as bleak as it was last spring now that vaccine distribution is underway. See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited May 5, 2021) (showing vaccine implementation statistics).

Defendant claims that he is obese, that he has borderline hypertension, and that he has been a smoker for thirty years. Dkt. # 105 at 4–5. A review of defendant's BOP medical records supports the first two claims, Dkt. # 107 at 2, 8–9, 23, 28, but not the third.[1] The CDC has identified hypertension and obesity as medical conditions that can make a person more likely to get severely ill from COVID-19. See People with Certain Medical Conditions, CDC (Apr. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 5, 2021). The risk of severe illness and death from COVID-19 increases greatly with age, and defendant is only 46 years old. See Risk for COVID-19 Infection, Hospitalization and Death by Age Group, CDC (Feb. 18, 2021), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (last visited May 5, 2021) (reflecting that while people 40–49 years old were 15x more likely to be hospitalized than people 5–17 years old, people who were 65–74 years old were 40x more likely to be hospitalized than that same reference group). Notably, defendant tested positive for COVID-19 on April 21, 2020 and he experienced various symptoms, including a fever, shortness of breath, and a cough. Dkts. # 107 at 13–15. Defendant claims that he has continued to experience shortness of breath following his COVID-19 infection. Dkt. # 105 at 5. Although BOP medical records reflect that defendant denied shortness of breath on May 11, 2020 and informed his medical provider that he felt "great," Dkt. # 107 at 11, the records also document that he was first prescribed an Albulterol Inhaler on April 24, 2020, for "wheezing and shortness of breath," and the prescription is not set to expire until June 26, 2021. Dkt. # 107 at 42.

Defendant submitted a declaration by Dr. Tara Vijayan, a physician who specializes in infectious diseases and has treated approximately 100 patients who have tested positive for COVID-19. Dkt. # 108 at ¶¶ 1–4. Dr. Vijayan offered her opinion that defendant is "unquestionably at high risk for serious disease from COVID-19 if he is re-infected." Dkt. # 108

---

[1] Although defendant's BOP medical records note that he smoked marijuana daily for more than five years, Dkt. # 107 at 20, given that defendant has been in custody for much of the last 30 years, it is unlikely he smoked marijuana regularly during that entire period. Dkt. # 114 at 13.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 7

¶ 42. Dr. Vijayan also stated, however, that all of the currently available vaccines "have demonstrated a significant reduction in severe infection from SARS-CoV2." Dkt. # 108 ¶ 27. And the government has presented evidence that defendant was offered the Pfizer COVID-19 vaccine on January 28, 2021, and he refused it. Dkt. # 116 at 8. The overwhelming scientific consensus is that vaccination is the most effective way to avoid contracting the virus. Key Things to Know About COVID-19 Vaccines, CDC (Apr. 28, 2021), https://www.cdc.gov/ coronavirus/2019-ncov/vaccines/keythingstoknow.html (last visited May 5, 2021). In response to the government's evidence, defense counsel reports he that "was not aware that [defendant[2]] allegedly refused a COVID-19 vaccine when the compassionate release motion was filed." Dkt. # 117 at 2. The defense nevertheless argues that defendant should not be penalized for refusing the vaccine. The Court agrees in principle, but defendant's failure to alert the Court to his access to the vaccine, and defendant's lack of any explanation for declining it, does not encourage the Court's confidence in defendant's motives. Even assuming defendant has met his burden to demonstrate that "extraordinary and compelling" reasons exist, however, additional considerations warrant denial of relief.

### c. Additional Considerations

The Court must assess whether a sentence reduction to time served is consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3582(c)(1)(A). Relevant factors include: (i) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (ii) the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; to adequately deter criminal conduct; "to protect the public from further crimes of the defendant"; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been

---

[2] Defendant's reply refers to "Mr. Catlett," rather than Mr. Weems, Dkt. # 117 at 2, but the Court presumes this was an error.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 8

found guilty of similar conduct"; (iv) the sentencing guidelines; and (v) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a); see also United States v. Grimes, No. CR11-5509 BHS, 2021 WL 319404 (W.D. Wash. Jan. 26, 2021) (summarizing relevant factors). Here, the Court finds that the sentencing factors weigh against compassionate release.

The Court agrees with the government that the nature and circumstances of the crime were exceptionally serious. Defendant and his then-girlfriend, Mozelle Frazier-Dubois, possessed three firearms, body armor, and large amounts of cocaine, crack, and heroin. PSR ¶¶ 12, 14, 15. Moreover, the vast amount of cash found, $404,842.07, and the presence of various luxury items, PSR ¶ 12–13, indicate that the drugs seized represented only a small fraction of the amounts defendant and Ms. Frazier-Dubois actually trafficked in. Notably, defendant conducted the drug trafficking operation out of the home where Ms. Frazier-Dubois' then 17-year-old son resided, thereby exposing him to the risks associated with that operation. PSR ¶ 11.

Defendant's criminal history and characteristics also cut against compassionate release. The offense for which defendant is currently incarcerated is defendant's third federal conviction related to drug trafficking or distribution. As a result of his many convictions, both state and federal, defendant has spent close to half of his entire life incarcerated. See PSR ¶¶ 34–47 (reflecting defendant's criminal history). And when defendant was most recently out of custody on supervised release, see PSR ¶ 47, defendant misled U.S. probation and engaged in the drug dealing that led to his current incarceration. See, e.g., Dkt. # 44 ¶ 10 (defendant residing at a different address than that provided to probation); PSR ¶ 75 (detailing evidence that defendant falsified employment records). Defendant's repeated failure to engage in prosocial behavior evidences that the need for the Court to protect the public from further crimes of the defendant remains pressing. The need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence also disfavor granting compassionate release here. The Court finds that granting compassionate release would not be consistent with the sentencing factors set forward in § 3553(a). The Court therefore DENIES defendant's motion for compassionate release.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 9

### IV. CONCLUSION

For all the foregoing reasons, defendant's motion for compassionate release (Dkt. # 105) is DENIED. The parties' respective motions to seal (Dkts. # 106, # 115) are accordingly GRANTED. The government's motion to file an overlength response (Dkt. # 113) is also GRANTED.

IT IS SO ORDERED.

DATED this 17th day of May, 2021.

Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 10