UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DWIGHT WEEMS,<br><br>Defendant. | Case No. CR15-89RSL<br><br>ORDER DENYING DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on defendant's second motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. # 124). Having considered the motion and the record contained herein, the Court finds as follows:

## I.    Procedural Motions

As an initial matter, the Court finds compelling reasons justify sealing defendant's records containing sensitive information (Dkt. # 126). Defendant's motion to seal (Dkt. # 125) is accordingly GRANTED. The parties' respective motions to file overlength briefs (Dkts. # 127, 131 & 135) are also GRANTED.

## II.    Background

Defendant is a 47-year-old inmate currently incarcerated at Herlong Federal Correctional Institution ("Herlong FCI"). Dkt. # 124 at 14. On September 21, 2015, defendant pled guilty to conspiracy to distribute cocaine and heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and § 846, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Dkt. # 44. On January 8, 2016, the Court sentenced defendant to a

192-month prison term and five years of supervised release. Dkt. # 69 at 2-3. Defendant is currently scheduled for release from the custody of the Federal Bureau of Prisons ("BOP") on October 15, 2028. Dkt. # 132 at 4.

On March 30, 2021, defendant filed his first motion for compassion release. Dkt. # 105. Defendant's primary argument was that "his medical conditions and resulting heightened vulnerability to COVID-19" constituted an extraordinary and compelling circumstance justifying compassionate release. Id. at 6. This Court denied Mr. Weems's motion on May 17, 2021. Dkt. # 118. In denying defendant's motion, the Court reasoned that even if Mr. Weems's medical conditions and COVID risk established an extraordinary and compelling reason, a sentence reduction to time served was not consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). Id. Specifically, the Court found that the seriousness of the underlying offense, defendant's criminal history and characteristics, and defendant's conduct while on supervised release all militated against compassionate release. Id.

The government urges the Court to view the instant motion as a motion for reconsideration of defendant's initial motion for compassionate release. Dkt. # 132 at 5-6. However, the instant motion follows a new request to defendant's warden, Dkt. # 124 at Exh. K, and raises new arguments for the Court's consideration. Thus, the Court considers defendant's motion as a second motion for compassionate release.

### III.   Legal Framework

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" Dillon v. United States, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). Congress has provided an exception to that rule, known as compassionate release, which allows the Court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c); see also United States v. Aruda, 993 F.3d 797, 799 (9th Cir. 2021); United States v. Keller, 2 F.4th 1278, 1281 (9th Cir. 2021). The First Step Act of 2018 amended the procedural requirements governing compassionate release. Prior to the First Step Act's passage, only the Director of the BOP could bring motions for compassionate release. Now, under the First Step

Act, defendants are permitted to directly petition the Court for compassionate release. As amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction; . . .
> > > >
> > > > (ii) . . .
> > > >
> > > > and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

Before passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. See 28 U.S.C. § 994(t). In doing so, Congress instructed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id. The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13. In relevant part, the policy statement provides,

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE - 3

not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—

> (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

### Commentary

**Application Notes:**

1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   **(A) Medical Condition of the Defendant—**

   > (i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
   >
   > (ii)  The defendant is—
   >
   > > (I)  suffering from a serious physical or medical condition,
   > >
   > > (II)  suffering from a serious functional or cognitive impairment, or
   > >
   > > (III)  experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE - 4

environment of a correctional facility and from which he or she is not expected to recover.

. . . .

**(D) Other Reasons.—**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

2. **Foreseeability of Extraordinary and Compelling Reasons.**—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment.  Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

3. **Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.

. . . .

U.S.S.G. § 1B1.13. The Ninth Circuit has held that U.S.S.G. § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." Aruda, 993 F.3d at 798, 802. The Court may consider U.S.S.G. § 1B1.13 in exercising its discretion, but it is not binding. Id.

## IV.    Defendant's Characteristics

In deciding whether to grant defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1), the Court considers: (A) whether defendant has met the statutory exhaustion requirement for compassionate release, (B) whether "extraordinary and compelling reasons warrant such a reduction," and (C) the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable. See Keller, 2 F.4th at 1283-84 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

### A. Exhaustion Requirement

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE - 5

The Court first determines whether defendant has met the statutory exhaustion requirement. Where, as here, the Director of the BOP has not filed the motion on defendant's behalf, the Court may only consider the motion if defendant has requested that the BOP make such a motion and either (i) defendant has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (ii) 30 days have elapsed since the "warden of the defendant's facility" received a compassionate-release request from defendant. Keller, 2 F.4th at 1281 (quoting 18 U.S.C. § 3582(c)(1)(A)). The parties agree that defendant has satisfied the exhaustion requirement. See Dkts. # 124 at 30-31, # 132 at 6. The Court therefore considers the merits of defendant's motion for compassionate release.

## B. "Extraordinary and Compelling" Circumstances

The Court next considers whether "extraordinary and compelling reasons warrant such a reduction" in defendant's term of imprisonment. 18 U.S.C. § 3582(c)(1)(A). Defendant identifies "four independent 'extraordinary and compelling' reasons." Dkt. # 124 at 15. These include (1) the risk of a third, breakthrough COVID-19 infection; (2) the more onerous conditions of confinement Mr. Weems has had to endure; (3) the unjustified disparity between Mr. Weems's sentence and that of his co-defendant; and (4) the post-sentencing changes in sentencing law. Id. at 15-16. The Court addresses each proffered reason in turn.

### 1. Risk of Breakthrough COVID-19 Infection

Defendant argues that the ongoing risk posed by the COVID-19 pandemic constitutes an "extraordinary and compelling circumstance" justifying his release. Dkt. # 124 at 38-49. Courts in this district have considered one or more of the following factors when evaluating a compassionate release request based on the threat COVID-19: (i) whether the inmate is at higher risk because of his or her age and/or race; (ii) whether the inmate has one or more, medically-documented, chronic health conditions that render him or her more vulnerable to COVID-19; (iii) the fatality rate for individuals with similar health conditions as compared with the overall fatality rate for COVID-19; (iv) whether the inmate has previously tested positive for the coronavirus that causes COVID-19 and, if so, whether the inmate suffers from any long-term effects of the disease; and (v) whether the inmate's release is expected to reduce the risk of him

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE - 6

1  or her contracting COVID-19. <u>United States v. Powers</u>, No. CR15-166-TSZ, 2020 WL 3605748,

2  *2 (W.D. Wash. July 2, 2020) (collecting cases).

3       Here, defendant claims that he is at a higher risk because of his age (47) and race (Black),

4  and that he is more vulnerable to COVID-19 due to obesity, borderline hypertension, and a

5  history of smoking. Dkt. # 124 at 40. He notes that he has contracted COVID-19 twice while

6  incarcerated, and that as a result of these infections, he continues to suffer shortness of breath

7  requiring the use of an inhaler. <u>Id.</u> at 27. Finally, defendant argues that he is at a higher risk for

8  reinfection if he remains incarcerated. <u>Id.</u> at 44.

9       Turning first to defendant's heightened risk, the Court agrees that the most recent data

10  supports a finding that defendant's age and race lead to a somewhat higher risk of contracting

11  COVID-19. <u>See</u> <u>Risk for COVID-19 Infection, Hospitalization, and Death By Race/Ethnicity</u>,

12  CDC (Sept. 15, 2022), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-

13  discovery/hospitalization-death-by-race-ethnicity.html (last visited Oct. 31, 2022) (finding that

14  Black or African American persons were 2.3x more likely to be hospitalized and 1.7x more

15  likely to face death compared to "White, Non-Hispanic" persons). However, as the Court noted

16  in its order denying defendant's first motion for compassionate release, the risk of severe illness

17  and death from COVID-19 increases greatly with age, and defendant is only 47 years old. <u>See</u>

18  Dkt. # 118 at 7; <u>see also</u> <u>Risk for COVID-19 Infection</u>, <u>Hospitalization and Death by Age</u>

19  <u>Group</u>, CDC (Sept. 16, 2022), https://www.cdc. gov/coronavirus/2019-ncov/covid-

20  data/investigations-discovery/hospitalization-death-by-age.html (last visited Oct. 31, 2022)

21  (finding that while people 40–49 years old were 2x more likely to be hospitalized and 10x more

22  likely to face death than people 18-29 years old, people 65–74 years old were 5x more likely to

23  be hospitalized and 60x more likely to face death when compared to the same reference group).

24       Turning second to defendant's claim that his obesity, borderline hypertension, and history

25  of smoking render him more vulnerable to COVID-19, the Court finds strong support for only

26  the first claim. Defendant's BOP medical records support his claim of obesity, Dkt. # 126 at 17,

27  and the latest CDC data indicates that obesity puts individuals at a higher risk for severe

28  COVID-19 outcomes. <u>See</u> <u>Underlying Medical Conditions Associated with Higher Risk for</u>

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE - 7

1   Severe COVID-19: Information for Healthcare Professionals, CDC (June 15, 2022),

2   https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (last

3   visited Oct. 31, 2022). As to defendant's borderline hypertension, this underlying condition was

4   first raised in defendant's initial motion for compassionate release. Dkt. # 108 at ¶¶ 35-36.

5   However, defendant's medical records for 2021 through March 2022 include only two blood

6   pressure readings, in November 2021, both of which were in the normal range. See Dkt. # 126 at

7   10. Furthermore, the Court notes that the most recent CDC findings state that it is

8   "inconclusive" whether hypertension increases the risk of a severe COVID-19 outcome. See

9   Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19:

10  Information for Healthcare Professionals, CDC (June 15, 2022),

11  https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (last

12  visited Oct. 31, 2022). Finally, as to defendant's claim that he is a former smoker, the Court

13  previously stated that it did not find support in the record for defendant's contention, and no new

14  evidence has been offered in support of that claim. Dkt. # 118 at 7.

15          Turning third to defendant's claim that he has twice tested positive for COVID-19 and, as

16  a result of his first infection, suffers from shortness of breath, the Court finds clear support for

17  defendant's two prior COVID-19 infections. Dkt. # 126 at 19. Defendant first tested positive in

18  April 2020 (before he received the vaccine) and experienced various symptoms, including a

19  fever, shortness of breath, and a cough. Dkts. # 107 at 13-15.  Defendant next tested positive in

20  January 2022 (after receiving the vaccine) and although the BOP medical records describe his

21  second infection as "symptomatic," the records also note that he had no "Cough, Shortness of

22  Breath, Fatigue, Body aches, Sore throat, Diarrhea, Headache, Loss of taste or smell, Nausea or

23  vomiting" and that his temperature was normal (97.9 degrees). Dkt. # 126 at 13, 21. Defendant

24  claims that he has continued to experience shortness of breath following his initial COVID-19

25  infection. Dkt. # 124 at 48. The last episode of shortness of breath documented in defendant's

26  medical records was in November 2021, before he contracted COVID-19 the second time. Dkt.

27  # 126 at 4-5. Specifically, defendant reported "episodic" shortness of breath "in the cold or with

28  exertion." Id. at 4. His Albuterol inhaler, which was initially prescribed in April of 2020 but

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE - 8

discontinued in October 2020 "for lack of symptoms," was re-prescribed in November 2021. <u>Id.</u> at 4-5. Thus, the Court accepts defendant's claim that – at least to some extent – he continues to deal with long-term symptoms stemming from his prior COVID infections.

Finally, turning to defendant's argument that he faces an increased risk of reinfection if he remains incarcerated, the Court acknowledges that many district courts – including this one – have recognized an increased risk of COVID-19 infection for incarcerated individuals. <u>See</u> Dkt. # 118 at 6 ("COVID-19 has created unprecedented challenges for federal prisons, where inmate populations are large and close contact between inmates is unavoidable.").

Thus, defendant has established that he is at a higher risk for COVID-19 reinfection due to his age, race, obesity, and the fact that he is incarcerated. He has also shown that he has been infected with COVID-19 twice already while incarcerated and continues to deal with episodic shortness of breath. Defendant cites numerous cases in which similarly situated inmates were granted compassionate release. Dkt. # 124 at 41-42. However, the most recent of these cases were decided in January 2021, meaning that the opinions either pre-date the advent of COVID-19 vaccines (which first became available in the United States in December 2020) or were decided in the very early days of vaccine availability.[1] <u>See</u> <u>id.</u>; <u>see also</u> <u>Covid Vaccines</u>, U.S. Dep't of Health and Hum. Servs., https://www.hhs.gov/coronavirus/covid-19-vaccines/index.html (last visited Oct. 31, 2022).

Notably, since defendant brought his first motion for compassionate release, he has received two doses of the Moderna vaccine and a Pfizer-BioNtech booster. Dkt. # 126 at 22. This is significant as "district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection." <u>United States v. Smith</u>, 538 F.Supp.3d

---

[1] Defendant also relies heavily on <u>United States v. Rodriguez</u>, No. CR5-960-JPO, 2022 WL 158685 (S.D.N.Y. Jan. 18, 2022). This case is both from a district court and out of circuit, and thus is not binding on this court. Furthermore, the Court notes that in <u>Rodriguez</u>, the district court reduced the sentence of a defendant who had already served 15 years in prison for the underlying offense from 50 years to 25 years. 2022 WL 158685 at *4, *6. Thus, the defendant still faced 10 years in prison. Here, defendant's projected release date is in 2028.

990, 996 & n.8 (E.D. Cal. 2021) (collecting cases); <u>see also</u> <u>United States v. Grummer</u>, 519 F. Supp. 3d 760, 763 (S.D. Cal. 2021) (collecting cases concluding that the risks posed by COVID-19 are lessened through vaccination); <u>United States v. Broadfield</u>, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release.").

Other district courts in this circuit have held that when a vaccinated defendant seeks compassionate release, he must offer evidence of an elevated personal risk of severe harm despite the protections of vaccination. <u>See</u> <u>Smith</u>, 538 F.Supp.3d at 993-1000. For example, evidence that vaccination will not protect them against severe harm from COVID-19 or that the facilities where they are incarcerated are experiencing a surge in infections. <u>Id.</u>; <u>see also</u> <u>United States v. Shults</u>, No. CR17-136, 2022 WL 2990716 (E.D. Cal. July 28, 2022) (finding defendant's vaccinated status foreclosed a finding of extraordinary and compelling circumstances despite defendant's risk factors, including obesity, and the fact that defendant had been infected with COVID-19 twice before).

Here, defendant has not shown that there is reason to believe the vaccine and booster he received will not be effective in protecting him against severe harm from COVID-19. In fact, based on defendant's medical records it appears that his post-vaccination COVID-19 infection was neither particularly severe nor caused any long-term symptoms. Defendant also cannot show that there is a surge of infections in his facility, FCI Herlong. <u>See</u> <u>COVID-19</u>, BOP, https://www.bop.gov/coronavirus/ (last visited Oct. 31, 2022) (showing 0 inmates infected and 0 deaths due to Covid-19 within the facility). While the Court acknowledges that no vaccine is 100% effective (as evidenced by the breakthrough infection that Mr. Weems suffered), Mr. Weems's vaccination status substantially reduces both the likelihood of contracting the virus again and the likelihood that any infection will be extremely severe.

The numerous cases cited by defendant to support the proposition that district courts have found a prisoner's COVID-19 vulnerability constitutes an "extraordinary and compelling reason" even after the introduction of vaccines do not alter the Court's analysis. See Dkt. # 124

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE - 10

1    at 48-49. Critically, the cases cited by defendant were all decided during the initial rollout of the

2    vaccines (between February and April of 2021), when the real-world efficacy of the novel

3    vaccines was still uncertain. Id. Now, almost two years after vaccines first became available,

4    their effectiveness is widely accepted. See COVID-19 Vaccines Are Effective, CDC,

5    https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/index.html (last visited

6    Nov. 18, 2022). Accordingly, district courts have been less likely to recognize COVID-19

7    vulnerabilities like those claimed by defendant as extraordinary and compelling reasons

8    justifying release. See, e.g., United States v. Woodberry, No. CR18-49-RAJ, 2022 WL 1803334

9    (W.D. Wash. June 1, 2022) (finding defendant's underlying medical conditions of obesity and

10    asthma insufficient in light of the fact that he had received a COVID-19 vaccine and booster);

11    United States v. Baker, No. CR18-131-RAJ, 2022 WL 1404649 (W.D. Wash. May 4, 2022)

12    (finding defendant's increased risk of COVID-19 due to obesity insufficient in light of the fact

13    that he had received a COVID-19 vaccine); United States v. Burnett, No. CR17-29-JLR, 2022

14    WL 2440079 (W.D. Wash. July 2, 2022) (same).

15        Given the protection offered by COVID-19 vaccines and boosters, the Court concludes

16    that the possibility defendant may suffer from a breakthrough infection does not constitute an

17    "extraordinary and compelling" reason.

18        **2. Harsher Conditions of Confinement**

19        Defendant also argues that "extraordinary and compelling" circumstances are established

20    by the fact that he faced harsher conditions of confinement due to his incarceration during the

21    COVID-19 pandemic. The Court agrees that defendant likely faced harsher conditions of

22    confinement during the pandemic, and that this is a relevant factor to consider in the context of

23    compassionate release. However, the fact that defendant – and his fellow inmates – served

24    "harder time" during the pandemic is not sufficient, by itself, to constitute an "extraordinary and

25    compelling" reason justifying release.

26        Petitioner also argues that he faces continuing anxiety and fear of contracting the virus.

27    While concerns about contracting the virus are certainly understandable, "[g]eneral concerns

28    about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE - 11

1  reasons for a reduction in sentence." See United States v. Eberhart, __ F. Supp. 3d __, 2020 WL
2  1450745, at *2 (N.D. Cal. 2020); United States v. Stanard, No. CR16-320-RSM, 2020 WL
3  2219478, at *4 (W.D. WA. May 7, 2020).

4         **3. Unjustified Disparity Between Co-Defendants**

5         Defendant argues that disparity between his sentence and that of his co-defendant
6  presents another "extraordinary and compelling" reason justifying a reduction in sentence. Mr.
7  Weems's co-defendant and now-wife, Mozelle Frazier-Dubois, was granted compassionate
8  release by this Court on October 5, 2020, after serving nearly half of her 10-year sentence. Dkt.
9  # 103. Defendant argues that this compels us to grant his motion because (1) "Ms. Frazier-
10 Dubois's offense conduct did not differ substantially from Mr. Weems' conduct in this case";
11 (2) both "have criminal histories"; and (3) both "have comorbidities that put them at risk for a
12 severe outcome upon infection with COVID-19." Dkt. # 124 at 53-59.

13        Defendant's first two arguments go to the fairness of defendants' original sentences.
14 However, these arguments are unavailing. Regardless of their culpability for the underlying
15 conduct, Ms. Frazier-Dubois pleaded guilty to a different crime than defendant and had a
16 substantially different criminal history. Compare Dkt. # 63 at 1 (noting Mr. Weems pleaded
17 guilty to violations of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 846, as well as 18 U.S.C.
18 § 924(c)(1)(A)(i)) with Dkt. # 71 at 1 (noting Ms. Frazier-Dubois pleaded guilty to violations of
19 21 U.S.C. § 846, 21 U.S.C. § 841(b)(1)(B), and 18 U.S.C. § 924(c)(1)(A)(i)); compare Dkt. # 63
20 at 12 (calculating Mr. Weems's criminal history score of 8) with Dkt. # 71 at 8 (calculating Ms.
21 Frazier-Dubois's criminal history score of 0). The difference in the two defendants' sentences is
22 thus not an "unwarranted disparity" but easily explained by their different Guidelines
23 calculations.

24        As to Ms. Frazier-Dubois's motion for compassionate release, the Court notes that there
25 are several key differences between her motion and defendant's present motion. First, the
26 underlying medical conditions faced by Ms. Frazier-Dubois are different from that of defendant.
27 Dkt. # 103 at 6 (listing underlying conditions including type 2 diabetes mellitus, hyperlipidemia,
28 hypertension, and obesity). Second, and perhaps most critically, the motions were brought at

1    drastically different stages of the pandemic. Ms. Frazier-Dubois's motion was brought in

2    September 2020 and granted in October 2020. See Dkts. # 96, 103. Thus, her motion predated

3    the availability of vaccines that have greatly minimized the risk of contracting COVID-19 or

4    facing severe illness from the virus. Finally, analysis of the § 3553(a) factors is individual to

5    each defendant, and in Ms. Frazier-Dubois's case, weighed in favor of granting compassionate

6    release.

7          The fact that defendant's sentence and success in moving for compassionate release are

8    different from his co-defendant does not constitute an unwarranted disparity. It is explained by

9    the differing circumstances of each defendant. Thus, any alleged disparity does not constitute an

10   "extraordinary and compelling" reason justifying a reduction in sentence.

11         **4. Changes in Sentencing Law**

12         Mr. Weems also contends that changes in federal sentencing law since his first federal

13   offense constitutes another "extraordinary and compelling" circumstance justifying his release.

14   Dkt. # 124 at 59. Post-sentence changes in sentencing law may be considered in assessing a

15   defendant's eligibility for compassionate release. See United States v. Chen, 48 F.4th 1092 (9th

16   Cir. 2022); United States v. Kanohokula, 572 F.Supp.3d 895, 902-04 (D. Haw. 2021). Here,

17   defendant raises two core arguments. First, in connection to both his 2004 and 2015 convictions,

18   "Mr. Weems had little choice but to accept a significant sentence due to the threat of a life

19   sentence – a threat that could not be made under current law." Dkt. # 136 at 18. Second, that

20   defendant has, overall, "served far more time in federal custody than warranted for his conduct –

21   some it unjustified under current law." Id. at 19.

22         Turning to defendant's first argument, he is correct in his statement that under the law

23   that governed his 2004 and 2015 sentencings, he could have been subject to enhanced penalties

24   under 21 U.S.C. § 851, which provides for enhanced sentences for federal drug trafficking

25   offenders with prior felony drug convictions. Prior to 2018, federal law imposed a mandatory

26   life sentence on federal drug trafficking offenders if the government filed a § 851 notice of two

27   qualifying prior convictions for a "felony drug offense," and a mandatory 20-year sentence if the

28   government filed a notice of one qualifying prior conviction. See 21 U.S.C. § 841 (2015). As

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE - 13

1    defendant notes, his 1995 conviction alone could have qualified as "two qualifying prior

2    convictions" under the law at the time. See 21 U.S.C. § 802(44). Thus, at both his 2004 and

3    2015 sentencings, defendant risked the possibility that the government would file § 851 notices

4    and invoke the mandatory sentences.

5         Defendant is also correct in noting that the First Step Act of 2018 changed the law in this

6    area by (1) reducing the mandatory minimums to 15 years for one prior qualifying conviction

7    and 20 years for two prior qualifying convictions; and (2) altering the kinds of convictions for

8    which a § 851 enhancement could apply. See Pub. L. No. 115-391, 132 Stat. 5194; United States

9    v. Asuncion, 974 F.3d 929, 930-31 (9th Cir. 2020). However, § 851 enhancements were not

10   applied in any of defendant's convictions, and defendant has not established that the identified

11   changes in the law affect *his* sentences.

12        In 2004, defendant pleaded guilty to "use of a communications facility" in violation of 21

13   U.S.C. § 843(b). Dkt. # 124 at 20. Defendant received a 96-month sentence. Id. at 21. Defendant

14   contends that the strategy for pleading guilty to the 21 U.S.C. § 843(b) violation was to avoid

15   the potential mandatory life sentence or 20-year mandatory minimum that could have been

16   imposed had the government filed § 851 notices. Id. at 21-22. However, defendant

17   acknowledges that had he plead guilty to one of the substantive drug trafficking counts in the

18   indictment, he would have faced a mandatory minimum of 10 years under current law. Id. at 60.

19   He also acknowledges that the current Guidelines range for a violation of § 843(b) is 100 to 137

20   months. Id. at 61. Thus, defendant has not established that changes in sentencing law would

21   have led to a shorter sentence if he were sentenced today.

22        In 2015, defendant pleaded guilty to violations of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and

23   846, as well as 18 U.S.C. § 924(c)(1)(A)(i). Id. at 22. Defendant received the 192-month

24   sentence he is currently serving. Id. at 24. Again, he contends that the strategy for pleading

25   guilty was to avoid the potential mandatory life sentence or 20-year mandatory minimum that

26

27

28

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE - 14

could have been imposed.[2] Id. at 62-63. However, defendant acknowledges that the applicable Guidelines range has not changed. Dkt. # 136 at 18.[3] Furthermore, the mandatory minimums defendant was facing – 10 years for his drug trafficking offense and 5 years (to run consecutively) for his firearm offense – have not changed. See 21 U.S.C. § 841(b)(1)(A); 18 U.S.C. § 924(c). Thus, again, defendant has not established that changes in sentencing law would have led to a shorter sentence if he were sentenced today.

To the extent defendant argues he would have pleaded guilty to different charges included in the 2004 and 2015 indictments had he been pleading under today's sentencing laws, and thus would have received different sentences, such claims are too speculative to support a reduction in sentence.

Turning to defendant's second argument, the Court agrees with defendant that the sentence for his first federal conviction in 1995 would be different if he were sentenced today and was the result of "racially disparate crack cocaine guidelines of the 1990s and early 2000s." Dkt. # 124 at 59. However, this alone is insufficient to show "extraordinary and compelling" circumstances. Furthermore, as discussed above, defendant does not show that either his 2004 or his 2015 sentences would be different under current sentencing law. Defendant's arguments that he might have been able to secure better plea deals under today's sentencing laws are again too speculative to support a reduction in sentence.

For the foregoing reasons, the Court finds that in this case, post-sentence changes in sentencing law do not constitute an "extraordinary and compelling" reason justifying a reduction in sentence.

## C. § 3553(a) Factors

---

[2] The parties dispute whether defendant would be subject to *any* enhancement under current law. See Dkt. # 132 at 19-20; Dkt. # 136 at 18. However, because the § 851 notice was not actually filed in this case, this issue is not material to the Court's analysis.

[3] Notably, defendant's sentence of 192 months is below the Guidelines range, as Count 4 (Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i)) required a five-year term of imprisonment to be served consecutively to Count 1. Thus, as the government notes, defendant's effective guideline range was 211 to 248 months.

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE - 15

Having determined that defendant has not made the requisite showing of extraordinary and compelling reasons for compassionate release, the Court need not analyze whether a reduction in defendant's sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a).

**V. Conclusion**

For all the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Defendant's motion for compassionate release (Dkt. # 124) is DENIED.

2.  Defendant's motion to seal (Dkt. # 125) is GRANTED.

3.  Defendant's motions to file overlength briefs (Dkt. # 127 & Dkt. # 135) are GRANTED.

4.  Government's motion to file an overlength brief (Dkt. # 131) is GRANTED.

DATED this 12th day of December, 2022.

Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE - 16